## Grabosky v. McLaughlin et al.

*Hymen Schwartz,* for plaintiff.
*G. Coe Farrier,* for defendants.

SLOANE, J., August 29, 1939.—Petitioner, Susan R. Grabosky, has appealed by way of a petition and writ of certiorari from the "action" of the Zoning Board of Adjustment of the City of Philadelphia. The board of adjustment opposes this appeal and moves for rescission of the writ on the ground that the board did not "act", that it simply recommended action to city council.

T. T. Reilly, Inc., filed an application to the board of adjustment asking it to recommend to city council an amendment to the Philadelphia Zoning Ordinance of August 10, 1933, Ordinances and City Solicitor's Opinions, 1933, p. 268, changing the designation of a certain area from class "B" residential to class "C" residential. After a hearing, the board concluded to grant applicant's request and accordingly drew up and submitted to city council an amendment embodying the proposed change.

(City council has given no definite action to the recommended amendment). Petitioner then got a writ of certiorari to the board of adjustment so that this court might review the board's action. Upon the present motion, the sole question to be decided is whether or not this court, considering the circumstances, can receive the appeal.

The powers and duties of municipal authorities in cities of the first class with respect to zoning are set forth in the Act of May 6, 1929, P. L. 1551, 53 PS §3822, et seq.[1]

Under the terms of this statute the Philadelphia City Council has provided for a method by which the board of adjustment may prepare and submit amending ordinances to change the restrictions or regulations set forth in the Philadelphia Zoning Ordinance, supra, p. 336, sec. 27.[2] The hearing in the present case and the submission

[1] Sections 4 and 5, governing the procedure for changing zoning regulations, restrictions, etc., provide as follows:

"Section 4. . . .: The Council of such city shall provide for the manner in which such regulations and restrictions, and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed. However, no such regulations, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen (15) days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such city.

"Section 5. Changes.—Such regulations, restrictions and boundaries may, from time to time, be amended, supplemented, modified or repealed. In case, however, of a protest against any such change, duly signed and acknowledged by the owners of twenty (20) per cent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear or adjoining on the sides thereof extending one hundred (100) feet therefrom, or of those directly opposite thereto extending one hundred (100) feet from the street frontage of such opposite lots, such change shall not become effective except by the favorable vote of three-fourths of all the members of the council of such city. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments."

[2] The provision reads as follows:

"Changes in the Ordinance.

"(1) By Reports to the Council. The Board of Adjustment may, from time to time, upon its own initiative, or shall, upon notice from

of the proposed amending ordinance were in pursuance of the authority granted by the ordinance.

Petitioner bases her right to appeal upon section 8 of the Act of 1929, supra:

"Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer, department, board or bureau of the city, may present to a court of record a petition, duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty (30) days after the filing of the decision in the office of the board."

An examination of sections 4 and 5 of the 1929 Act does not disclose any provision for appeal from the action of city council in drawing up and enacting a change in the regulations or restrictions. And there is no provision for an appeal before council has taken action on a proposed amending ordinance. The sections very clearly set forth the procedure which an aggrieved party may take. He may appear at the hearing which must be held before the ordinance may become effective, and he may require the council to pass the ordinance by a three-fourths vote if he is successful in obtaining the signatures of a certain percentage of the nearby property owners upon a written protest. If, despite this action, the council proceeds to pass the ordinance, the protesting landowner is still not without remedy to protect his legal rights. He may attack the validity of the ordinance which council has passed by bringing a bill in equity to prevent the property in question from being subjected to the use which he claims is violative of his legitimate interests. This

---

the Council, prepare an ordinance to amend, supplement or change any portion of this ordinance or change a district or boundary, or other regulations herein established, and hold such public hearings thereon as may be necessary or required by Act of May 6, 1929, and submit its recommendation to the Council, or a proposed ordinance with a report thereon."

remedy was expressly approved in the case of Huebner et ux. v. Philadelphia Saving Fund Society et al., 127 Pa. Superior Ct. 28, 32, where the court said:

"The 8th section of the Act of 1929, supra (53 PS §3829), provides that persons who are aggrieved by any decision of the Board of Adjustment may appeal to the court within thirty days. The act is silent as to the right of one to appeal from the action of city council; but, as the Board of Adjustment is only an authorized arm or agency of the city council, one who has been injured by the action of the latter body cannot be deprived of an opportunity to be heard by the court. . . . We can conceive of no sound reason that would deprive one who has been prejudicially affected by a specific ordinance from questioning its action. If a wrong has been done, a remedy should be afforded by the courts."

The trouble with petitioner's present appeal is that the "wrong", if wrong there be, has not yet been done. The designation of the area in question has *not been changed;* it cannot be contended that the board of adjustment has the power to change it independently of the action of the city council.

It is petitioner's contention, however, that the board of adjustment has made a decision, that she has been aggrieved by that decision, and that therefore her appeal falls within the wording of that portion of section 8 of the Act of 1929, supra, which provides for an appeal.

Has the board decided, in an appealable sense? We do not think so.

The board of adjustment is vested with various types of authority under the statutes and ordinances relating to it. Some of its acts are administrative, some legislative, and some quasi-judicial. Strictly speaking, every time the board decides upon a course of action with respect to any of its functions it has made a "decision". And yet we do not think that it would be seriously contended that all of these decisions would be appealable to the courts under the language of section 8. It seems clear

that, in order to be appealable, a decision must be one which possesses a certain degree of finality and which operates directly to affect the rights of property owners.

In the present case, it seems to us that the board has acted merely as a sort of committee of city council. Its action was purely legislative and was characterized neither by finality nor by effectiveness to change the rights of property owners. The board has done nothing more than draft a proposed piece of legislation and "reported favorably" upon it to council. Such action is no more a "decision" in the sense in which the word is used in the zoning statute than would be a report of the ways and means committee to Congress upon a proposed piece of legislation. The ordinance which the board has drafted has no more binding effect upon the rights of individuals than any *proposed* legislation, than any bill introduced in the General Assembly or council. We cannot believe that the legislature ever intended to grant a right of appeal to the courts from action of this nature.

In the following cases similar statutes conferring a right of appeal from the "decisions" of certain public bodies were under consideration. In O'Boyle et al. v. Shannon, 80 Ind. 159, 161, the court said:

"This discretionary power of county commissioners, over the property of their respective counties, has been held to be analogous to the legislative power possessed by many municipal bodies and is distinguishable from the judicial or *quasi* judicial powers conferred upon such commissioners. . . .

"It follows, therefore, that the order of sale, from which an appeal was prayed in this case, was not a 'decision' within the meaning of the statute authorizing appeals from the decisions of county commissioners in a large class of cases."

And in Fulkerson v. The Board of Commissioners of Harper County, 31 Kan. 125, 127, it was said:

"He [the plaintiff] says that '*any person* who shall be aggrieved by *any decision* of the board of commissioners

220

may appeal from the decision of such board to the district court.' And he claims that a decision may be made by the board in the exercise of one power as well as in the exercise of any other power. This is true. The board must make decisions in the exercise of its legislative powers as well as in the exercise of its *quasi* judicial powers. And even in the exercise of its discretionary powers, or any of its political powers, it must also make decisions. And in any single matter that may come before the board it may make decisions. Many of such decisions may be preliminary or intermediate; and will the plaintiff in error· claim that an appeal lies from each and every one of such decisions? Suppose that the board in the present case, instead of refusing to grant the petition of the plaintiff in error, and the fifty-five others who signed the same, had simply decided to postpone the matter until the next meeting of the board; and suppose the plaintiff in error had felt aggrieved at such decision: could he have taken an appeal to the district court? And could he have continued to take appeals from every decision made by the board with reference to the matter? . . . Then what are the limitations upon the privilege of persons to take appeals from the decisions of the board of county commissioners? The district court is simply *a court,* and exercises only *judicial* power; hence we would suppose that appeals from the board of county commissioners to the district court must be limited to such cases as require the exercise of purely judicial powers; and therefore that when the board of county commissioners exercises political power, or legislative power, or administrative power, or discretionary power, or purely ministerial power, no appeal will lie."

Analyze the situation: What do we do if we sustain the appeal? We then say that the board was wrong in recommending a change in the zoning ordinance. But council already has the recommendation, and in effect therefore we would be stopping council from considering the recommended change. That we have no right to in-

terfere with council in this wise is clear. The separateness of the branches of democratic government is basic and the courts cannot enjoin council to pause in consideration of proposed ordinances. See 32 C. J. 262 §412. When the wrong occurs, petitioner will have her remedy.

The motion to rescind the writ of certiorari to the board of adjustment is granted.